**UNITED STATES of America,
Appellee,**

v.

**Russell Eugene WESTON,
Jr., Appellant.**

**No. 99–3016.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 4, 1999.

Decided Oct. 29, 1999.

---

A. J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellant. L. Barrett Boss, Assistant Federal Public Defender, entered an appearance.

David B. Goodhand, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher and Erik P. Christian, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, WALD and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

Dissenting opinion filed by Circuit Judge WALD.

HARRY T. EDWARDS, Chief Judge:

Russell Eugene Weston, Jr., the appellant in this case, is charged with the murder of two United States Capitol Police Officers and the attempted murder of a third. In this appeal, Weston seeks to challenge an order of the District Court requiring him to undergo a competency examination to be conducted by a psychiatrist suggested by the Government. Weston claims that he can only be examined by a psychiatrist of his own choosing or by a neutral doctor appointed by the trial court. However, Weston never suffered the situation of which he complains, because he repeatedly refused to speak to the psychiatrist who had been appointed at the suggestion of the Government. Due to Weston's refusal to undergo an examination by a Government psychiatrist, the prosecution finally withdrew its objection to a finding of incompetency and Weston was committed for treatment to restore competency pursuant to 18 U.S.C. § 4241(d) (1994). As a result, the order that Weston challenges was never carried out and it is no longer in effect. Accordingly, we dismiss the appeal as moot.

## I. BACKGROUND

On October 9, 1998, Russell Weston was indicted for the July 24, 1998 murders of United States Capitol Police Officer Jacob J. Chestnut and Special Agent John M. Gibson, and for the attempted murder of United States Capitol Police Officer Douglas B. McMillan. On October 15, 1998, the Government and the defense filed a joint request pursuant to 18 U.S.C. § 4241 for a mental competency examination of Weston.

The District Court appointed Dr. Sally C. Johnson, the Chief Psychiatrist and Associate Warden of Health Services at the Mental Health Division of the Federal Correctional Institution in Butner, North Carolina ("FCI–Butner"), to conduct an outpatient psychiatric examination of the defendant to assist the court in determining whether the defendant was competent to stand trial. Dr. Johnson spent approximately 20 hours with the defendant, personally administering psychiatric and personality tests to him; she also reviewed numerous medical and mental health records and interviewed family members. Following her examination, Dr. Johnson submitted a report to the District Court and defense counsel under seal. Thereafter, defense counsel consented to a release of the report in unredacted form to the Government. Dr. Johnson concluded that the defendant was presently incompetent to stand trial, but that competency might be restored with extended hospitalization and treatment with anti-psychotic medication.

Concerned by what it perceived to be certain omissions and inconsistencies in Dr. Johnson's report and in the defendant's conduct, the prosecutor asked the District Court to compel the defendant to submit to an examination by a mental health expert of the Government's choosing. By Memorandum and Order filed January 28, 1999, *reprinted in* Joint Ap-

pendix at 35–60, and modified on February 12, 1999, *United States v. Weston*, 36 F.Supp.2d 7 (D.D.C.1999), the District Court granted the Government's motion. The same order also committed the defendant to the United States Medical Center for Federal Prisoners at Springfield, Missouri ("Springfield") for an examination by another court-selected expert. The examination by the Government doctor was to take place while the defendant was at Springfield.

The defendant was sent to Springfield on February 3, 1999. A staff psychiatrist there, Dr. James Wolfson, was to serve as the court-selected examiner; Dr. Debra DePrato was retained as the Government's expert. The defendant refused to answer substantive questions posed by Dr. Wolfson, Dr. DePrato, or other staff members at Springfield, repeatedly stating that he declined to answer questions upon the advice of counsel. Counsel for Mr. Weston states that this behavior was "solely a product of [Weston's] delusions," and that Weston has refused to talk to his own attorney on the same grounds. Appellant's Reply Br. at 4 n.2, 10. In any event, as a result, the doctors were unable to obtain any pertinent information and the District Court ordered that Weston be brought back to Washington, D.C.

On March 3, 1999, the District Court modified its order to permit Dr. Wolfson and Dr. DePrato to examine Weston at the courthouse or at the Correctional Treatment Facility in Washington, D.C., and to allow Dr. DePrato to arrange psychological testing of Weston. However, Weston again refused to cooperate with the doctors.

Weston's competency hearing was scheduled to take place on April 22, 1999, but on April 9, 1999, in light of Weston's refusal to cooperate with any further mental examinations and concerned that the case not be delayed any longer than necessary, the Government withdrew its objection to a finding of incompetency based on Dr. Johnson's original report. On April 22, 1999, the District Court found Weston incompetent to stand trial and committed him for treatment to restore competency pursuant to 18 U.S.C. § 4241(d).

## II. ANALYSIS

■ In this appeal, Weston argues that the District Court lacked the authority to order a competency examination by a doctor chosen by the Government. Weston claims that, under 18 U.S.C. §§ 4241 and 4247(b), competency examinations may be conducted only by mental health experts appointed by the trial court or selected by the defendant. The Government does not contend that it has an absolute right to the appointment of an expert to conduct a competency examination; rather, the Government claims only that it has the right to request, and the District Court has the discretion to grant, a competency examination by a mental health expert suggested by the Government. We need not decide the scope of the disputed statutory provisions, however, because the instant appeal is moot.

The date(s) for the competency examinations at issue have come and gone. Because the defendant refused to speak to the Government's suggested psychiatrist, no examination ever took place. By withdrawing its objection to a finding of incompetency, the Government also necessarily withdrew its request that the defendant be compelled to submit to an examination by a doctor other than Dr. Johnson. The defendant has been found incompetent to proceed and has been committed for treatment to restore competency pursuant to 18 U.S.C. § 4241(d). In sum, the order that Weston seeks to challenge was never carried out and is no longer in effect.

"[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (citation omitted). "For that reason, if [ ] event[s] occur

while a case is pending on appeal that make[ ] it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed [as moot]." *Church of Scientology of California v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). That is precisely what has occurred here. Events have transpired such that Weston did not submit to the disputed examination and is no longer subject to any order requiring him to do so.

■ Weston argues, however, that the case should not be dismissed as moot because it falls within the exception to the mootness doctrine for cases capable of repetition yet evading review. This exception applies if: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration[;] and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C.Cir.1998) (alterations in original) (citing *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998)).

■ We assume, in agreement with the defendant, that the disputed issue is capable of repetition, because Weston might again be ordered to submit to a Government competency examination. First, if the doctors at FCI–Butner ultimately conclude that Weston cannot be restored to competence in the foreseeable future, the prosecution may seek an examination by a Government psychiatrist to challenge that conclusion. Second, even if the doctors at FCI–Butner conclude that Weston has regained competency, Weston may call a number of defense experts to challenge that conclusion and, in that event, the Government may want its own expert to assist in responding to the defense experts. In either event, the District Court may again order a competency examination by a mental health expert suggested by the Government. However, even assuming that the issue surrounding the Government's asserted right to suggest the appointment of a mental health expert is capable of repetition, this case is nonetheless moot because any further dispute over this issue will not evade review.

Weston argues that an order compelling a defendant to undergo a competency examination by a Government mental health expert is immediately appealable under this court's decision in *United States v. Weissberger*, 951 F.2d 392 (D.C.Cir.1991). *Weissberger* held that an order compelling a 30–day competency evaluation was immediately appealable under the collateral order doctrine, which allows the appeal of orders that might otherwise be viewed as non-final, so long as three conditions are met: the order must "(1) 'conclusively determine the disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) 'be effectively unreviewable on appeal from a final judgment.'" *Weissberger*, 951 F.2d at 396 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). There is no doubt that if *Weissberger* applies in a situation such as the one at hand, then the case is moot. This is because immediate appeal will be available in the future in the event that Weston is again ordered to undergo a competency examination by a Government mental health expert. Thus, the issue would not escape review.

The Government, however, argues that *Weissberger* is inapposite. In the Government's view, the court's determination in *Weissberger* that the District Court's order would be effectively unreviewable on appeal after final judgment was based on the loss of liberty associated with the confinement for the competency evaluation ordered in that case, not the intrusion of the examination itself. In this case, the Government argues, Weston has already been held without bail so there is no loss of liberty.

We need not decide the applicability of *Weissberger* in this case, because, regardless of the availability of immediate appeal,

the issue raised in this case will not evade review. If *Weissberger* does apply (so that any future order of a mental examination by a Government doctor is immediately reviewable and, presumably, subject to a stay pending review), then the defendant's interest in avoiding the intrusion of the examination will be protected. On the other hand, if *Weissberger* does not apply and the defendant must wait until after his conviction (if any) to obtain review, that result will necessarily reflect the court's conclusion that the order at issue is not "effectively unreviewable on appeal from a final judgment" and that protecting a defendant from the intrusion associated with a particular medical examination is not, by itself, worth the extra delay and disruption of the criminal trial process.

In sum, because any future order compelling this defendant to undergo a competency examination by a Government psychiatrist will be subject to review, either immediately or following a final judgment, the case is moot.

### III. CONCLUSION

For the foregoing reasons, the appeal is dismissed as moot.

*So ordered.*

WALD, Circuit Judge, dissenting:

I believe this court should at a minimum make clear that in the future district court orders such as the one in question here are immediately appealable under *United States v. Weissberger*, 951 F.2d 392 (D.C.Cir.1991). Weston raises a serious challenge to the district court's authority to order that he undergo a psychiatric examination by an expert of the government's choosing.[1] Today's panel opinion delays, perhaps indefinitely, a decision as to whether defendants can be subjected to such examinations. I think both the mootness doctrine and a healthy respect for the proper administration of justice, if not for potential violations of defendants' rights, require that we resolve the applicability of *Weissberger* to cases such as this one.

Had my colleagues' opinion made clear that *Weissberger* would allow an appeal of any future order like this one, then I would agree this appeal was moot, since the examination in dispute here had already taken place and the issue would not be "capable of repetition, yet evading review," because in the future this defendant would be entitled to interlocutory review of a similar order.

I agree with the panel as well that if *Weissberger* does not apply to this case, *i.e.*, if there is no liberty interest in avoiding a court-ordered examination by a psychiatrist of the government's choice, then the issue would not be "capable of repetition, yet evading review," because the question of whether the district court was within its authority in ordering the examination could be effectively reviewed on appeal from a final judgment of conviction.[2]

Where the panel opinion falls down on the job, however, is its obliviousness to a repetition of what has just occurred in this case, *i.e.*, a situation where the trial judge

---

1. The government suggests that since Weston does not contest the authority of the district court to order an examination by a court-appointed expert under 18 U.S.C. §§ 4241, 4247, he has no liberty interest in avoiding an examination by a government-retained expert, even if the district court lacked the authority to order Weston to undergo such an evaluation. This argument borders on sophistry. If Weston has a liberty interest in avoiding unwanted medical examinations, the fact that the statute authorizes an examination by a court-appointed expert does not vitiate Weston's liberty interest in avoiding other, unauthorized, examinations. The putative liberty interest is in avoiding forced psychiatric evaluations, although in this case the only alleged unlawful infringement of that interest is the examination by government-retained experts.

2. Alternatively, the question could be reviewed on appeal from an order of commitment, but to date Weston has not challenged his commitment under 18 U.S.C. § 4247(b) (competency evaluation) and under 18 U.S.C. § 4241(d) (determination of likelihood of future competency).

orders a challenged examination and the court of appeals denies a stay, so that by the time an appeal reaches a merits panel the defendant's alleged liberty interest in not being examined by a government-retained psychiatrist has already been violated. At that point, unless the defendant goes to trial and is convicted, he may never have the issue decided.[3] The defendant could indeed undergo many such examinations without any opportunity to test their validity on appeal. That unfortunate cycle could be avoided by this court's undertaking to decide the limited question of whether *Weissberger*'s provision for an interlocutory appeal would apply in any such future occurrence.

If *Weissberger* were held to apply, the case would not be "capable of repetition, yet evading review," in that our decision would have clarified the availability of an interlocutory appeal, and in so doing, we could assume that a stay of an order allowing a challenged examination would be granted pending appeal.[4]

But, alas, nothing in today's panel opinion prevents Weston from being denied a stay from this court the next time he objects to a court-ordered psychiatric evaluation by a government expert; indeed nothing suggests that it would be inappropriate for the court to deny such a stay. On the other hand, the lack of guidance in today's panel opinion means that a future panel could grant a stay, in order to resolve the question of whether *Weissberger* applies. *Cf. In re Sealed Case,* 151 F.3d 1059, 1067 (D.C.Cir.1998) (mandamus appropriate "when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice") (quotation marks omitted); *Southern Bell Tel. & Tel. Co. v. United States,* 541 F.2d 1151, 1155 (5th Cir.1976) ("[W]ithout criticizing our previous denials of motions to stay, this abortive case serves to convince us that special consideration should be given by us and by the District Court in future similar cases."). But in making its stay decision— which is where the rubber hits the road for a defendant in Weston's position—the next court is back at square one, just as the prior court was when it denied Weston's stay this time.

Thus, if this court fails to issue a stay the next time the issue presents itself, it is hard to see why that case would not become moot for the same reasons cited by this panel.[5] The real possibility that a

---

3. A decision about whether to grant a stay of the district court's order should not be mistaken for a decision on the merits of the order. A motion for a stay is decided without the benefit of full briefing or oral argument and, under the court's "stringent" standards, is rarely granted. *See, e.g.,* Joint Appendix ("J.A.") at 74 (order denying stay).

4. The panel opinion "assumes" that this issue is capable of repetition. *See* Maj. Op. at 147–48. There is good reason for that assumption. The Supreme Court has made it clear that the question is whether "the controversy [is] *capable* of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not." *Honig v. Doe,* 484 U.S. 305, 318–19 n. 6, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Our own cases also make it clear that this requirement should not be interpreted overly stringently. *See Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia,* 972 F.2d 365, 370 (D.C.Cir.1992)

(reasonable expectation that racist group would seek to march in D.C. again, despite fact that group did not aver it had plans to do so, sufficient to avoid mootness); *Doe v. Sullivan,* 938 F.2d 1370, 1378 (D.C.Cir.1991) (soldier's challenge to policy of using experimental vaccines on members of armed services without consent not moot in light of increasing risks of biological warfare, despite fact that Gulf War was only occasion military had not sought consent before vaccinating service members). The possibility that there will be another contested competency hearing, where the government will seek to rely on its own expert, fits comfortably within this line of cases as satisfying the "capable of repetition" requirement.

5. It can hardly be argued that, absent a stay, an order requiring the defendant to submit to a psychiatric examination would not normally be implemented before this court could review the order. *See* 18 U.S.C. § 4247(b)

future case would also be moot means that this case satisfies the "capable of repetition, yet evading review" exception to mootness. *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam).

For that reason, I believe it is necessary to rule that *Weissberger* allows for immediate appeal of district court orders requiring a defendant to undergo a psychiatric exam at the hands of a government-retained expert before we can find that this case is moot. I do not find that proposition daunting.

In *Weissberger,* this court held plainly that an order requiring a defendant to undergo a competency evaluation is immediately appealable under the collateral order doctrine. *Weissberger,* 951 F.2d at 397. The court noted that the requirements of the collateral order doctrine were "easily satisfie[d]." *Id.* at 396. The court explained that a forced competency evaluation is unreviewable on an appeal from final judgment for the same reasons that a denial of bail cannot be effectively reviewed.

> If appeal is not allowed from an order requiring pre-trial detention, there can be no remedy for the resulting loss of liberty. The issue becomes moot upon conviction and sentence. The same is true here. Not only would Weissberger be subjected to a 30–day confinement in a mental institution, but he also would be subjected to the additional intrusion of a forced medical examination. If he is declared competent and the trial proceeds, postconfinement review will provide no relief for the loss of liberty associated with the competency evaluation.

*Id.* at 396–97 (citations omitted). I read this opinion as controlling the case before us today.

(court may commit defendant for reasonable period not to exceed thirty days for purposes of competency evaluation); *Hinckley v. United States,* 163 F.3d 647, 651 (D.C.Cir.1999)

The government suggests that *Weissberger* is inapplicable because there the defendant was challenging two aspects of the competency evaluation order, the confinement as well as the examination, whereas Weston only challenges one aspect of the district court's order, the examination. *Cf. United States v. Deters,* 143 F.3d 577, 582 (10th Cir.1998) (holding competency evaluation order appealable where defendant challenges confinement, but noting that whether examination itself is immediately appealable is a separate question). However, *Weissberger* nowhere indicates that its result turned on the fact that Weissberger was challenging the confinement aspect of the order.

Reading *Weissberger* to allow appeals only where the defendant is challenging his confinement could lead to incongruous results. A defendant such as Weissberger, who is ordered to undergo inpatient evaluation, can challenge both the psychiatric examination and the commitment order. However, where the court orders an inpatient examination, and later, like the court below, issues another order allowing further examination by government-retained psychiatrists, the defendant would be unable to challenge that examination, even though it differs from Weissberger's only in the question of when the court's confinement order was entered. Likewise, a defendant who is subjected to an outpatient examination while in custody in a non-psychiatric prison facility, as Weston was, would also be unable to challenge the examination. It does not seem to me that the right to interlocutory appeal under *Weissberger* should depend on such vagaries of timing and location.

In fact, *Weissberger* makes clear that the court was concerned with the "intrusion of a forced medical examination" and found the order appealable because "postconfinement review will provide no relief

("[B]oth Supreme Court and circuit precedent hold that orders of less than two years' duration ordinarily evade review.") (quotation marks omitted).

for the loss of liberty *associated with the competency evaluation.*" *Weissberger,* 951 F.2d at 396–97 (emphasis added). Furthermore, there is good precedent for the principle that a forced medical examination constitutes an invasion of a person's liberty interests. *See United States v. Davis,* 93 F.3d 1286, 1289 (6th Cir.1996) (competency evaluation orders immediately appealable because "the loss of liberty occasioned by the commitment for examination, *and the forced intrusion of a court-ordered psychiatric examination,* are completely unreviewable by the time of final judgment") (emphasis added); *Union Pac. Ry. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891) (federal courts have no inherent power to order medical examinations in civil cases because "[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law"); *cf. Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 287, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (O'Connor, J., concurring) ("I agree that a protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions...."); *United States v. Morgan,* 193 F.3d 252, 256 (4th Cir.1999) (order allowing forced medication of pretrial detainee immediately appealable); *United States v. Brandon,* 158 F.3d 947, 951 (6th Cir.1998) (same). *But cf. United States v. Barth,* 28 F.3d 253, 255 (2d Cir.1994) (competency evaluation order not immediately appealable on grounds that competency determination is not separate from merits of action, and defendant could challenge commitment by writ of habeas corpus).

*Weissberger,* correctly, requires that orders requiring defendants to undergo psychiatric examinations are immediately appealable, and I believe this court should at least make that clear if this defendant, and others like him, are not to be repeatedly subjected to psychiatric examinations whose propriety has never been established. At a minimum, Weston deserves a meaningful opportunity for judicial review of the validity of these "intrusive, unwanted medical examination[s]." *Weissberger,* 951 F.2d at 396.

Even if I am wrong, and *Weissberger* is eventually read more narrowly not to provide an interlocutory appeal from a competency examination *per se,* it would be in the interests of everyone—this defendant, future defendants, their counsel, and the government—to know that in advance of the next time the issue is raised. Otherwise everyone runs the risk of another abortive attempt to learn just what the law is, and to plan accordingly.

For these reasons, I dissent.