NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0192n.06

Case No. 11-5227

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| **MICHAEL RAYMOND THOMPSON,** | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| _____ | ) | |

FILED

*Feb 16, 2012*

LEONARD GREEN, Clerk

**BEFORE:  BATCHELDER Chief Judge; GUY and MOORE, Circuit Judges.**

**ALICE M. BATCHELDER, Chief Judge.**  Michael Raymond Thompson was charged in a four-count indictment with robbery as well as conspiracy, firearms, and murder charges in connection with that robbery. On December 21, 2010, while the United States was still determining whether or not to seek the death penalty against Thompson, Thompson's counsel presented evidence to the United States that might mitigate against the death penalty. Included in this evidence was an October 2009 psychological report prepared by a psychologist retained by Thompson's counsel, calling into question Thompson's competency to stand trial. Because of this report, the United States filed a motion under 18 U.S.C. § 4241(a)[1] requesting a mental examination and a hearing to

---

[1] Under 18 U.S.C. § 4241(a), the district court must grant either party's motion for a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

determine Thompson's competency to stand trial, which the court granted over Thompson's objection.

Thompson filed this interlocutory appeal on February 25, 2011, arguing that (1) the exam and hearing should be delayed until the completion of the death penalty authorization process; (2) the mental exam would violate Thompson's Fifth and Sixth Amendment rights; (3) the court should order the appointment of "firewalled" government attorneys to manage aspects of the exam and hearing; and (4) Thompson should receive additional safeguards.

Both the district court and this court denied Thompson's motions for a stay of the exam and the hearing. The mental examination took place throughout April, May, and June 2011, and the district court conducted a two-day hearing on June 28 and 29, 2011. The examining psychologist submitted a written report and testified at the hearing. On August 17, 2011, the government notified the district court that it would not be seeking the death penalty. On September 7, 2001, the district court found Thompson competent to stand trial.

Ordinarily, we have jurisdiction to hear an interlocutory appeal concerning an order of commitment for psychiatric examination. *See United States v. Mandycz*, 351 F.3d 222, 224 (6th Cir. 2003). We review for abuse of discretion the district court's decision to order a competency examination and hearing. *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007). Here, because the examination and hearing have already taken place, and the court has found Thompson competent, it may be that Thompson's appeal is moot. *See Neighbors Organized to Insure a Sound Env't, Inc. v. McArtor*, 878 F.2d 174, 178 (6th Cir. 1989) (holding case is moot where court is "not in position

to prevent what has already occurred").[2]  However, at oral argument, Thompson's counsel claimed that relief could still be granted in part by requiring the appointment of a new team of government attorneys who have not participated in the competency hearing to prosecute his case at trial.  It is not entirely clear to us whether the mootness exception for cases "capable of repetition yet evading review" may apply to this case.  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).  *Compare United States v. Deters*, 143 F.3d 577, 578 n.2 (10th Cir. 1998) (finding mootness exception where appellant challenged temporary commitment for mental evaluation), *and United States v. Boigegrain*, 122 F.3d 1345, 1347 n.1 (10th Cir. 1997) (en banc) (per curiam) (same), *with United States v. Sanders*, 276 F. App'x 532, 533 (8th Cir. 2008) (per curiam) (appellant failed to demonstrate challenged competency hearing was "capable of repetition"), *and United States v. Weston*, 194 F.3d 145, 148 (D.C. Cir. 1999) (finding mootness exception inapplicable because challenged mental examination would not evade review).

Because it is not clear that we lack jurisdiction on mootness grounds, we turn to the substance of Thompson's claims, and we conclude that they are meritless.  Thompson makes four arguments, each challenging the district court's order for the competency examination and the hearing.

First, Thompson argues that the district court erred in failing to delay his exam and hearing until after the completion of the death penalty authorization process.  While this delay might be of

---

[2]The concurrence offers another reason why the case might be moot:  Thompson and the United States reached a plea agreement upon which the district court recently relied to find Thompson guilty in open court.  But at that same hearing, the district court explicitly refused to finally accept the plea agreement until sentencing and advised Thompson that, were it to change the sentence that he and the United States jointly recommended, he will be free to revoke the plea agreement and go to trial.  The sentencing hearing has been scheduled for May, and the scheduling order re-emphasized that the plea agreement has not been formally accepted.  Thus, the plea agreement does not render this case moot now or any time soon—indeed, perhaps not ever.

some strategic value to Thompson, he cites no legal authority for this argument, and we have found none. His argument is without merit.

Second, Thompson argues that being compelled to undergo a mental examination prior to the completion of the death-penalty authorization process violates Thompson's Fifth and Sixth Amendment rights against self-incrimination and his right to counsel. Thompson cites *Estelle v. Smith*, 451 U.S. 454 (1981), for the proposition that a defendant's Fifth Amendment rights against self-incrimination can be implicated in a compelled mental examination. In *Estelle*, the Supreme Court affirmed the grant of habeas relief where the state trial court heard testimony during the penalty phase of a capital trial from the psychiatrist who had conducted a court-ordered competency exam. Because the defendant had not been advised of his Miranda rights before his exam, the Court held that incriminating statements he made during the exam could not be used against him at the penalty phase. "The fact that respondent's statements were uttered in the context of a psychiatric examination does not automatically remove them from the reach of the Fifth Amendment." *Id.* at 465. But the Court also stated that no Fifth Amendment issue would have arisen had the psychiatrist's findings been confined to the limited, neutral purpose of determining the defendant's competency to stand trial. *Id.*

Here, the district court ordered that the evaluation be used solely for determining competency. Because Thompson's trial has not yet occurred and the government is not currently seeking the death penalty, his claim that his statements have been used against him is, at best, premature. If Thompson is concerned that the government will attempt to introduce any

incriminating statements at the guilt or penalty phase of his trial, his remedy would be a motion in limine at that time.

Thompson's argument that the mental examination deprived him of his Sixth Amendment right to counsel is likewise meritless. He appears to claim that the Sixth Amendment is implicated because his counsel would not know if the government used the results of the mental exam to determine whether to seek the death penalty.[3] But Thompson cites no authority to show that would be impermissible. Even assuming that it could be, though, the Sixth Amendment's right-to-counsel protection in this context at most requires that defense counsel be informed of the "nature and scope" of the evaluation and put "on notice" that he would have to anticipate the prosecution's use of the mental exam if he raised a "mental status defense." *Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987). Here, both of those preconditions were met, so there could be no constitutional violation.

Third, Thompson argues that the district court erred in failing to designate a team of firewalled government attorneys to manage all issues related to the mental examination, including conducting the competency hearing. Thompson would like an entirely separate team of government attorneys, firewalled (meaning, cut off from the government attorneys prosecuting this case), to prevent the prosecuting attorneys from taking into account the results of the competency hearing in deciding whether or not to seek the death penalty. Because the mental exam and hearing have already taken place, and the government has decided not to seek the death penalty, Thompson now requests that a new team of attorneys, other than those who have already been involved in the case,

---

[3]At oral argument, counsel argued alternately both that Thompson's competency had no bearing on whether or not the government should seek the death penalty, and that it had a significant bearing on the matter.

be appointed and appropriately "firewalled" to continue handling his case. He makes this request even though he does not argue that the scope of the competency examination exceeded the boundaries set by the district court to cover only mental competency to stand trial.

Thompson cites no legal authority mandating these additional protections. Although he cites cases in which courts have granted such a request for "firewalled attorneys" or a "taint team," those cases all involved Federal Rule of Criminal Procedure 12.2, which controls mental examinations where the defense intends to introduce evidence of insanity as a defense at the guilt phase or sentencing phase. *See* Fed. R. Crim. P. 12.2. As the district court has stated, Rule 12.2 "does not deal with the issue of mental competency to stand trial." *See* Fed. R. Crim. P. 12.2 Advisory Committee Note. Rule 12.2 has no applicability here. Thompson's situation is controlled entirely by 18 U.S.C. § 4241.

Lastly, Thompson argues that the district court erred by not granting his request for additional "safeguards" regarding the location and manner of conducting the mental examination. He cites no legal authority for these requests, and we find them meritless.

For these reasons we **AFFIRM** the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring.** Although I am persuaded by the arguments advanced by the majority, I write separately because I would hold recent events in this case have rendered Thompson's appeal moot. On January 26, 2012, Thompson signed a plea agreement with the government. The district court accepted Thompson's guilty plea and adjudged him guilty in open court following a plea colloquy on that same day. Because the relief Thompson requests may no longer be granted, I would dismiss Thompson's appeal as moot. Should the course of events below resurrect this controversy, I would have no objection to considering whatever issues become live at that time.